IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHRISTI PICKENS                                                      PLAINTIFF

v.                          NO. 3:19-cv-00179 PSH

ANDREW SAUL, Commissioner of                                         DEFENDANT
the Social Security Administration

## MEMORANDUM OPINION AND ORDER

In this case, plaintiff Christi Pickens ("Pickens") challenges the findings of an Administrative Law Judge ("ALJ"). It is Pickens' contention that the findings are not supported by substantial evidence on the record as a whole because good reasons were not given for discounting the medical opinions of her treating physician, Dr. Terry Hunt, M.D., ("Hunt").[1]

---

[1] The "substantial evidence on the record as a whole" standard requires a more scrutinizing analysis than does the "substantial evidence" standard, which merely requires "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." See Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009) [numerous citations omitted]. "In the review of an administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." See Id. [numerous citations omitted].

A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). A treating physician's opinions may be discounted, though, if other medical assessments are supported by better or more thorough medical evidence or if he renders inconsistent opinions that undermine the credibility of his opinions. See Id. "[W]hether the ALJ grants a treating physician's opinion[s] substantial or little weight, the regulations ... provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) [quoting 20 C.F.R. 404. 1527(d)(2)].

Pickens has summarized the evidence in the record, and the Commissioner has not challenged the summary. It will not be reproduced, except to note several matters germane to the lone issue in this case.

Pickens was born on August 26, 1969, and was forty-six years old on April 1, 2016, i.e., the day she allegedly became disabled. She filed her application for disability insurance benefits on August 29, 2016, and alleged that she became disabled as a result of impairments that include degenerative disc disease, facet disease, and a bulging and herniated disc.

2

On December 5, 2014, an MRI was taken of Pickens' lumbar spine. The results revealed a "broad-based posterior disc bulge" at L2-L3 and a "mild broad-based posterior disc bulge" at L4-L5. See Transcript at 450-451. The radiologist reading the MRI assessed "[m]ultilevel degenerative disc changes most pronounced at the L2-L3 level" with "[m]ild central canal and mild right neural foraminal narrowing at [L2-L3]." See Transcript at 451.

Between March of 2015 and March of 2018, Pickens saw Hunt on multiple occasions with complaints of back pain.[2] Pickens reported that the pain was chronic, unrelenting, and exacerbated by movement. The pain also caused numbness and muscle spasms. Hunt's progress notes reflect that Pickens' lumbar spine was routinely tender on palpation, straight leg raises were routinely negative, and her gait was typically normal. Hunt repeatedly diagnosed back pain and attributed its cause to a number of different impairments.[3] Hunt prescribed pain medication, ordered Depo-

---

[2]   Back pain was Pickins' chief complaint and primary reason for seeing Hunt on approximately eleven occasions. See Transcript at 436-437, 453 (03/13/2015); 427-428 (01/15/2016); 420-421, 452 (08/30/2016); 417-418, 452 (12/30/2016); 415-416 (03/03/2017); 475-476 (04/28/2017); 474-475 (07/07/2017); 497-499 (08/22/2017); 495-497 (10/17/2017); 503-504 (02/16/2018); 501-502 (03/18/2018).

[3]   See Transcript at 416, 418, 421, 428, 437, 475, 476, 497, 499, 502.

Medrol injections and physical therapy, and referred Pickens to Dr. Sunil Gera, M.D., ("Gera"), a pain specialist.

Pickens began seeing Gera on December 23, 2015. See Transcript at 373-375. At the initial consultation, Pickens characterized her back pain as a ten on a ten-point verbal pain scale. She described the pain as a sharp, dull, aching, burning pain and reported that it was exacerbated by movement. The pain was not confined solely to her back but ran into her upper and lower extremities. She did report, though, that medicine helped ease her pain.

Gera performed a physical examination and made findings that included the following: (1) range of motion testing of Pickens' back revealed restricted flexion, moderate to severely restricted extension, and restricted lateral bending; (2) flexion and rotation of her thoracic spine was also restricted; (3) straight leg raising was positive for bilateral back pain; (4) Patrick testing was positive for bilateral S1 pain; and (5) she had tenderness in portions of her lumbar and thoracic spines. Gera diagnosed, inter alia, an acute episode of pain due to lumbar spondylosis, facet arthropathy of the lumbar area, degenerative disc disease of the lumbar

area, hip pain, and thoracic facet arthropathy. He prescribed medication, recommended a medial nerve branch block, and gave Pickens an injection.[4]

On March 10, 2017, an MRI was taken of Pickens' lumbar spine. See Transcript at 384-385. The results revealed multilevel degenerative disc disease, facet arthropathy, and levoscoliosis but was negative for spinal canal stenosis.

On May 22, 2018, Hunt completed a Medical Source Statement-Physical on behalf of Pickens. See Transcript at 521-522. In the document, Hunt represented that Pickens can lift and carry less than ten pounds, can stand and walk for only thirty minutes at one time and for less than two hours in an eight-hour workday, and can only sit for one hour without a break during an eight-hour workday. Pickens can never climb, balance, stoop, kneel, crouch, or bend. She requires frequent breaks and must have the opportunity to shift at will from sitting or standing/walking. She does not have the stamina to complete a normal workday or work week and is incapable of maintaining a full-time work schedule. When asked to provide objective medical findings to support the opinions, Hunt offered the

---

[4]  Gera subsequently saw Pickens again on approximately four occasions. See Transcript at 376 (02/05/2016), 377-378 (03/09/2016), 379-380 (04/12/2016), 381 (05/23/2016). Gera's progress notes from those presentations are largely consistent with his notes from his initial consultation.

following: "2016 MRI shows multilevel disc disease and facet arthropathy. Also levoscoliosis." See Transcript at 522.[5] He represented that the time period covered by his opinions was "15." See Transcript at 522.

Pickens completed a series of documents in connection with her application for disability insurance benefits. In a pain report, she represented that she experiences moderate back pain "all the time." See Transcript 196. The pain is caused by movement and prevents her from standing/walking and sitting for any length of time. In a function report, Pickens represented that her back pain impairs her ability to attend to her personal care, limits her ability to prepare meals and perform household chores, and limits her ability to get around. The pain prevents her from walking more than a short distance and requires her to rest for approximately five minutes before she can resume walking.

Pickens testified during the administrative hearing. See Transcript at 34-43. She worked as an apartment manager up until August of 2014, at which time she was terminated for an issue unrelated to her impairments. She subsequently worked various jobs but could not perform the lifting, bending, and squatting requirements of the work. She can sit for about

---

[5] The Court has been unable to find the results of a 2016 MRI. Hunt was likely referring to either the results of the 2014 MRI or the 2017 MRI.

fifteen to twenty minutes at one time, can stand for about ten minutes at one time, and can walk for about fifteen minutes before she must rest. She can lift a gallon of milk but nothing heavier. Because she has difficulty performing many of the typical household chores, her daughter helps perform them.

The ALJ found at step two of the sequential evaluation process that Pickens' severe impairments include degenerative disc disease and "unspecified arthropathies." See Transcript at 17. The ALJ assessed Pickens' residual functional capacity and found that she can perform light work with some additional physical, mental, and environmental limitations. With respect to Pickens' physical limitations, the ALJ found that Pickens can lift and/or carry twenty pounds occasionally and ten pounds frequently, and she can sit, stand, and walk for a total of six hours in an eight hour workday. She can also "occasionally stoop, kneel, crouch, and crawl, but never climb ladders." See Transcript at 18. In making the assessment, the ALJ found, in full, the following with respect to Hunt's opinions: "The [ALJ] gives some weight to … Hunt's opinion regarding the claimant's environmental limitations and postural limitation (ability to climb), but finds that the remainder of his opinions[s] [are] not consistent with the overall medical evidence of record." See Transcript at 23. The

ALJ found at step four that Pickens is unable to perform her past relevant work but found at step five that there is other work she can perform. The ALJ concluded that Pickens was not under a disability as defined by the Social Security Act from the alleged onset date through the date of the ALJ's decision.

The reason the ALJ gave for discounting Hunt's opinions—they are inconsistent with the overall medical evidence of record—is an appropriate reason for discounting them. The ALJ is obligated, though, to explain why the opinions are inconsistent with the overall medical evidence of record. See Walker v. Commissioner, Social Security Administration, 911 F.3d 550, 553 (8th Cir. 2018) (ALJ must explain with some specificity why he rejected treating physician's opinions). Although the specificity need not be great, the ALJ in this instance failed to provide any explanation for why Hunt's opinions are inconsistent with the overall medical evidence of record. The Commissioner offers several reasons why Hunt's opinions are inconsistent with the overall medical evidence of record and supports the reasons with some evidence. See Docket Entry 16 at CM/ECF 3-4. Although the Commissioner may ultimately prove to be correct, it is the ALJ's responsibility in the first instance, not the Commissioner's, to identify evidence that conflicts with Hunt's opinions.

In Shane T. v. Saul, 2019 WL 4143881 (D.Minn. 2019), a claimant challenged an ALJ's findings, in part, because the latter failed to properly evaluate the opinion of a treating physician. The magistrate judge agreed, finding the following with respect to the ALJ's consideration of the treating physician's opinion:

> Here, the ALJ gave [the treating physician's] opinion "little weight," stating that it was "not consistent with [the physician's] exam findings, nor the exam findings of other providers. It is not consistent with the claimant's objective diagnostic studies, which have generally revealed mild abnormalities." ... The ALJ did not elaborate further. She did not state which of the exam findings were inconsistent, nor did she indicate what other providers she was referring to. She also did not indicate which diagnostic studies she was referring to that revealed mild abnormalities, or even which abnormalities she was referring to, leaving the reader questioning whether she was referring to manipulative functioning, or some other abnormality that [the physician] referred to.
>
> ...
>
> Without more, the ALJ has not provided a good reason for affording [the treating physician's] opinion little weight. An ALJ must explain, "with some specificity, why he has rejected the treating physician's opinion." ... Here, the ALJ did not do so. ...

Shane T. v. Saul, 2019 WL 4143881, 4-5.

The reason the ALJ in Shane T. gave for discounting the treating physician's opinion—it was inconsistent with other medical evidence—is a

good reason for discounting the opinion. The ALJ there supported the reason with some evidence, e.g., it was inconsistent with the physician's own findings, inconsistent with the findings of other physicians, and inconsistent with objective diagnostic studies. Yet, the magistrate judge found that the reason lacked adequate support.

The Court is not persuaded that the ALJ here was required to have provided the degree of support, or specificity, required by the magistrate judge in Shane T. Some support is nevertheless required, and the ALJ here failed to provide any support for the reason she gave for discounting Hunt's opinions.

A remand is therefore warranted. Upon remand, Hunt's opinions shall be re-evaluated, and the ALJ shall provide support for the reason she gives in evaluating his opinions.

The Commissioner's final decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).


IT IS SO ORDERED this 3rd day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE